ALMON, Justice,
dissenting.
The question here is whether the summary judgment was correctly entered on the investors’ claims against James River and Merrill Lynch arising out of the simultaneous tender and call (“STAC”) of James River’s 10%% debentures (sometimes referred to as bonds).[1] The indenture, pursuant to which the debentures were issued, prohibits redemption within the first 10 years (until October 1, 1998) with money borrowed at less than 10%%. James River purchased about $200,000,000 of the debentures under the tender offer with money borrowed at 6%%, and redeemed less than $5,000,000 of the debentures with the proceeds of an issue of preferred stock. Of the total of $250,000,000 in debentures, James River purchased about $45,000,000 pursuant to the tender offer with other funds, which the plaintiffs allege were also the proceeds of low-cost debt. Thus, the holders of about $245,000,000 of the debentures responded to the tender offer. The plaintiffs contend that James River breached the indenture, and that James River and Merrill Lynch acted tortiously,[2] by using the $200,000,000 in funds borrowed at 6%% toward the retirement of the bonds.
The circuit court held there was no breach of the indenture and, therefore, no tortious conduct, because James River used only qualified funds — the proceeds of the sale of preferred stock — toward the redemption. The circuit court’s order construes the complaint as confusing the tender offer with the redemption and as taking the position that the indenture prohibits James River from making a tender offer with low-cost borrowed funds. This is not the plaintiffs’ position. Under the plaintiffs’ construction, the indenture would allow a tender offer with low-cost borrowed funds, so long as the threat of a follow-up redemption did not coerce acceptance of the tender offer at an artificially lowered price. In short, it is the very coordination of the tender offer with the redemption, the simultaneous aspect of the STAC, that violates the debenture.
Here are the figures that demonstrate the plaintiffs’ theory. The indenture allows redemption with qualified funds (e.g., retained earnings or proceeds of a sale of stock) in fiscal 1992 at a price of 108.60% of the principal amount of the indentures, plus accrued interest. On September 18, 1992, Merrill Lynch published notice of the STAC, making a tender offer at $1093.75 per $1,000 of principal of the bonds, plus accrued interest. The STAC letter stated that James River “currently intends to redeem Bonds not purchased pursuant to the offer as provided in the. Indenture.” The letter later notes that the indenture provides for redemption between October 1, 1992, and September 30, 1993, “at 108.60% of their principal amount, and at prices decreasing annually thereafter to 100% of their principal amount on or after October 1, 2008.” In short, the letter said, “Either tender at $1093.75 per $1,000 or we will redeem at $1086.00 (or less) per $1,000.”
Absent the threat of the redemption, the tender offer would have to be made at or near the market value of the debentures. The plaintiffs provided evidence that Merrill Lynch calculated a value of the bonds in June 1992, assuming they could remain outstanding until 1998, at $1146.16 per $1,000, and, in July 1992, calculated a value of $1210.20 per $1,000. Thus, the tender offer was more than $50 less than the June calculation and more than $116 less than the July calculation of market value per $1,000 in principal amount.
Nevertheless, because the tender offer was backed by the threat of a redemption, at an even lower price, to conclude the retirement of the bonds, the bondholders could not afford to ignore the tender offer. The activity that the plaintiffs refer to as tortious is the *1182 concealment of the fact that, at the time of the STAC, James River had only $3,000,000 in qualified funds on hand and could not raise more than $100,000,000 from the sale of preferred stock. In fact, from that sale, $80,-000,000 was used to retire other high-cost debt that similarly required the use of qualified funds. Therefore, the plaintiffs presented evidence that James River had a maximum of only $23,000,000 available for the threatened redemption. If the bondholders had known this, they say, they would not have ’ tendered at what they considered an unfairly low price of $1,093.75.
The indenture prohibits redemption in the first 10 years
“directly or indirectly, in whole or in part, from or in anticipation of the proceeds (or any part of the proceeds) of any moneys borrowed by or for the account of the Company which have an effective interest cost to the Company (calculated in accordance with generally accepted financial practice) of less than 10.75% per annum.”
(Emphasis added.) This is termed a “non-refund” provision, because the extinguishment of debt with other debt is a “refunding” of the debt.
The parties and the circuit court have treated three cases as being the most dispos-itive cases, most closely on point: Franklin Life Ins. Co. v. Commonwealth Edison Co., 451 F.Supp. 602 (S.D.Ill.1978), aff'd, 598 F.2d 1109 (7th Cir.), cert. denied, 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979); Morgan Stanley & Co. v. Archer Daniels Midland Co., 570 F.Supp. 1529 (S.D.N.Y.1983); and Shenandoah Life Ins. Co. v. Valero Energy Corp., (No. 9032, June 21, 1988) 14 Del.J.Corp.L. 396 (Del. Ch.1988) (not published in Atlantic Reporter ).[3] These three cases were published before these indentures were issued in October 1988; James River and- Merrill Lynch argue that they provided notice that the non-refund provision would not prevent a STAC. However, I do not, find them to support the circuit court’s judgment. I note the following two points as the principal distinguishing features: (1) None of these three cases involved a STAC; in all three cases, all of the securities or bonds were redeemed. (2) In each case, the redeeming issuer had enough qualified funds available to effect the entire redemption. The investors’ argument was that incurring substantial low-cost debt contemporaneously with the redemption violated the non-refund provision. The court in each case held that, because the issuer was careful to segregate the qualified funds and to use only qualified funds for the redemption, the fact that the issuer was also engaging in low-cost borrowing at the same time would not establish an indirect use of the low-cost debt to refund the bonds (or, in Franklin Life, 10%% preferred stock that was subject to a non-refund provision). This is called the “source rule” because the court looks only at the source of the funds actually used for the redemption, not at the redeeming issuer’s overall debt and capital structure.
Those three cases can easily be distinguished. In each of them, the issuer of the bonds had sufficient qualified funds on hand to retire the entire nonrefundable bond issue, so the redemption using those funds did not violate the non-refund provision. Here, James River could not retire the entire principal amount of the 10%% bonds with qualified funds, and it concealed that fact from its investors when making the STAC. By retiring 98% of the bonds through 6%% debt proceeds and other nonqualified funds, James River was able to reduce the amount of outstanding bonds to an amount that it could redeem with qualified funds. This, say the plaintiffs, amounts to an indirect use of the 6%% debt to effect a redemption, in violation of the non-refund provision.
I agree with the plaintiff investors that a fact question is presented on these issues. I would hold that the summary judgment was inappropriate on the contract count. I think *1183 some of the tort counts could probably also present fact questions, but in view of the majority’s holding it is not necessary for me to address those counts.
For the foregoing reasons, I dissent.
SHORES, KENNEDY, and COOK, JJ., concur.

. Three of the plaintiffs’ claims — fraud, conversion, and bad faith — were actually dismissed, but I will not discuss those claims separately in this dissent.

. The complaint also included a count alleging that the defendants had violated the Trust Indenture Act, 15 U.S.C. § 77ppp(b).

. Mann v. Oppenheimer & Co., 517 A.2d 1056 (Del.1986), is factually similar to this case in some respects. In that case, Oppenheimer did not follow through with a redemption, and the question was whether it had fraudulently threatened to follow the tender offer with a redemption without truly intending to redeem the bonds not tendered. The Supreme Court of Delaware reversed a summary judgment for Oppenheimer, holding that a fact question was presented on the fraud claim. The result in Mann does not support the summary judgment here.